[No. 23317. Department Two. September 22, 1931.]

THE STATE OF WASHINGTON, *on the Relation of Jay C. Allen, Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY *et al., Respondents.*[1]

[1]Reported in 2 P. (2d) 1095.

516

*Allen & Walthew,* for relator.

*Wright & Wright, Riddell, Brackett & Fowler, Joseph Matsen,* and *Eli M. Paulson,* for respondents.

BEALS, J.—Plaintiff filed in this court his application for a writ of review, seeking to bring before us for consideration an order of the superior court, dated July 20, 1931, denying the application of this plaintiff, filed in the case of *Rosenburg v. Marston,* an action pending before the superior court for King county, for an order requiring the receiver of the tenant of the Hotel Sorrento property to pay to plaintiff rent for the hotel during the pendency of the litigation. Upon the filing herein of plaintiff's application, a writ was issued to which, together with the application therefor, defendants have demurred, for want of sufficient facts and upon the ground that plaintiff has a plain, speedy and adequate remedy at law. Prior to the hearing upon the writ, a complete return was filed thereto, and the matter has been argued and submitted both upon the demurrer and upon the merits, defendant having answered the writ without waiving the demurrer.

It appears that Ella S. Rosenburg, being the owner of two tracts of improved real estate in the city of Seattle, one known as the "Sorrento Hotel," the other as the "Curtis Block," mortgaged these properties May 7, 1929, to Laura Allen to secure payment of a promissory note for $97,000, payable two years after date, interest thereon at the rate of six per cent per annum being payable monthly. The properties were

subject to a prior mortgage to the Equitable Trust Company in the sum of $300,000, securing a bond issue in that amount.

At the time of the mortgage to Mrs. Allen, Mrs. Rosenburg appointed plaintiff Jay C. Allen trustee to collect the rents from the properties, assigning the rents to him and directing him, *inter alia,* to pay Mrs. Allen the interest on her loan, and to set up a sinking fund with the Equitable Trust Company to be applied to certain designated purposes. The appointment of Mr. Allen as trustee was provided for in the mortgage, which also contained the following provision:

"(11) It is covenanted and agreed that no change or modification of any lease now existing upon the property shall be made nor shall the rental provided to be paid in any lease now upon any portion of the property be changed or modified without the written consent of the mortgagee herein, and if any such modification or change shall be made without the written consent of the mortgagee, then and in that event the mortgagee shall have the right at her option to declare the whole sum secured by this mortgage due and collectible and she may proceed accordingly."

Thereafter, the Equitable Trust Company and Mrs. Rosenburg gave to the tenants in possession of the properties written notice to pay the rents accruing therefrom to the plaintiff herein.

Plaintiff alleges that, during the year 1930, it was discovered that taxes for the year 1928 against the properties had not been paid and that the same had become delinquent. Mrs. Allen immediately insisted that these taxes be paid, whereupon Mrs. Rosenburg requested Mrs. Allen to advance sufficient funds to pay the same, which was done, Mrs. Allen paying the taxes in a sum somewhat in excess of $11,000. At this time, under date December 12, 1930, Mrs. Rosenburg

signed an agreement containing, among others, the following provisions:

"WHEREAS, under the terms of the mortgage so executed to the party of the second part, Jay C. Allen was appointed as trustee, and the rents of said properties were assigned to him, with right of collection so long as said mortgage remained unpaid, he, the said Jay C. Allen, to collect the same and to pay therefrom certain payments as in said mortgage expressed;

"Now, THEREFORE, it is AGREED:

"(1) That at the request of the said Ella S. Rosenburg, the party of the first part, Laura Allen, the party of the second part, does hereby agree to pay for and on behalf of the said Ella S. Rosenburg, the said taxes for the year 1928, together with penalty and interest to date of payment, and the said Ella S. Rosenburg does hereby promise and agree to repay the amount necessary to satisfy said taxes, penalty and interest, to the said Laura Allen on or before the 7th day of May, 1931 (that being the date when the principal sum secured by the mortgage to Laura Allen becomes due), together with interest thereon from the date of payment until paid, at the rate of one per cent (1%) per month, payable monthly.

"(2) That Jay C. Allen, the trustee collecting the rents, shall and he is hereby authorized and directed that out of the monthly rentals collected, remaining after paying his fees for collection, the monthly principal and interest payments to the Equitable Trust Co. on its mortgage, the interest payment to Laura Allen on her $97,000 note, any insurance premiums, and any repairs, he shall pay such balance to Laura Allen, to be applied by her, first in the payment of the monthly interest on said sum so paid by her in satisfaction of said taxes, and the balance upon the principal thereof.

"(3) That said Ella S. Rosenburg covenants and agrees that said sum necessary to be paid by the said Laura Allen to satisfy said taxes shall be added to the amount secured by said mortgage to the said Laura Allen, and that said mortgage shall be and remain se-

curity for the payment thereof, together with the interest thereon, and for any and all sums remaining due on the principal and interest thereof, that is to say, that the amount of her mortgage debt shall be considered increased by said sum, such portion thereof, however, to be paid as hereinabove stated.''

At the time of the execution of the mortgage in favor of Mrs. Allen, the properties were occupied by tenants holding under long term leases, the Sorrento Hotel having been leased for ten years to one Marston for $1,900 a month, payable monthly in advance. In February, 1931, the plaintiff herein having been collecting the rents under the agreements hereinabove referred to, Terry-Madison Company, a corporation, holding as tenant the lease of the hotel property as assignee from Mr. Marston, fell behind in payment of its rent, and finally abandoned the property; Mr. Marston, the manager of the company, absconding. Plaintiff and Mrs. Rosenburg thereupon jointly requested the appointment of a receiver for the tenant to take possession of and operate the hotel, H. P. Till being thereupon appointed receiver of the Terry-Madison Company for such purposes. During the months of March, April and May, the receiver paid to plaintiff as trustee certain sums by way of rent of the premises, but during the month of May, acting under direction of the court, the receiver disclaimed holding the hotel under the lease, since which time no rent whatever has been paid to plaintiff for the Sorrento property. Plaintiff has received certain rents from the ''Curtis Block,'' the rentals for which plaintiff alleges are somewhat in arrears. The income during 1930 being insufficient to enable plaintiff as trustee to make the payments which it was provided he should make, in order to prevent taxes against the property from becoming delinquent, plaintiff obtained from Mrs. Allen a further

advance of something over $7,000 with which to pay one-half the taxes for 1930, the remaining half being still unpaid.

Plaintiff further alleges that payments are due the first mortgagee, and that Mrs. Allen has commenced foreclosure of her second mortgage. He also alleges that the Curtis Block property is in need of repairs, and that the last half of the taxes for 1930 must soon be paid to avoid delinquency. It is also alleged that the mortgagor, Ella S. Rosenburg, is wholly insolvent and is a non-resident of the state of Washington.

Because of the situation as hereinabove set forth, plaintiff applied to the superior court, in the action of *Rosenburg v. Marston,* for an order requiring the receiver of the Terry-Madison Company to pay to plaintiff a reasonable rent for the Hotel Sorrento property, which application was by the superior court denied by the entry of the order hereinabove referred to, which order plaintiff here seeks to review.

Plaintiff is also prosecuting an appeal from the order sought to be reviewed in this proceeding, and defendant contends that the order of which plaintiff complains may not be reviewed by certiorari. It is, of course, true that, under Rem. Comp. Stat., § 1002, the right of review will not lie unless in the judgment of the court there is no "plain, speedy and adequate remedy at law." We are of the opinion that, under the facts disclosed by the record before us, plaintiff's remedy by way of appeal is inadequate, and that he may proceed by way of a writ of review. The receiver for the tenant of the hotel property is in possession thereof and operating the hotel without paying any rent therefor. We consider that, under the circumstances here shown, an appeal is not an adequate remedy, and that certiorari lies.

The lower court based its ruling largely upon

the decisions of this court in the cases of *Norfor v. Busby,* 19 Wash. 450, 53 Pac. 715, and *Western Loan & Building Co. v. Mifflin,* 162 Wash. 33, 297 Pac. 743. In the first of the two cases, it was held that § 5456, Bal. Code (Laws 1854, p. 162), providing for the appointment of a receiver in an action by a mortgagee for the foreclosure of a mortgage when the mortgaged property is insufficient to discharge the debt, had been repealed by Session Laws of 1869, p. 130, § 498, and that a receiver for mortgaged property should not be appointed merely because of the insufficiency of the security. This decision has stood as the law of this state for many years, and with the rule therein laid down we are in complete accord.

In the second of the cases cited, an action was brought to foreclose a mortgage which covered not only real estate but "the rents, issues, profits and income from said premises;" the plaintiff also relying upon an assignment executed and delivered with the mortgage whereby the income accruing from the property was assigned to the mortgagee. In the foreclosure suit, a special receiver was appointed, who collected the rents pending foreclosure. The mortgagor having been adjudged insolvent, a general receiver was appointed, who took charge of its affairs, save such as were included within the special receivership. The special receiver collected rents, kept the property in repair, preventing waste thereof, and made payments upon property which had been installed in the mortgaged premises, the title to which remained vested in other persons under contracts of conditional sale.

The mortgage was foreclosed, the property sold and bid in by the mortgagee for less than the amount of the judgment, a deficiency judgment in the amount of $3,000 being entered against the mortgagor and its general receiver. Thereafter, the special receiver

rendered his account showing an unexpended balance in his hands, to which conflicting claims were advanced by the mortgagee and the general receiver. From an order awarding this balance to the general receiver, the mortgagee appealed to this court.

The fund in controversy, of course, represented the net amount received by the special receiver by way of rents from the mortgaged premises, less his disbursements. The mortgagee did not, in the foreclosure action, seek to establish its lien upon any funds in the hands of the special receiver, but took simply a decree of foreclosure in the ordinary form. The appointment of the special receiver was fully justified in order to prevent waste of the property, but such appointment of itself gave to the mortgagee no claim to or lien upon the funds collected by such receiver. The mortgagee had the benefit of such of the income from the property as was expended by the receiver in repairs and in otherwise preventing waste of the property. It was held that, under the circumstances shown, the mortgagee was not entitled to have the fund in controversy applied on account of its deficiency judgment against the mortgagor and the general receiver, and that the general receiver was entitled to the fund to prorate the same among the general creditors of the mortgagor, including, of course, the appellant.

The case might well have been decided upon the ground that the mortgagee had waived its right to the fund by neglecting to seek to enforce some lien thereon in the foreclosure action and have its rights adjudicated by the decree rendered therein, but, in any event, the facts are so different from those in the case at bar that the case is not controlling here.

Neither is the first case cited controlling. Plaintiff sues herein as trustee operating under appointment by the mortgagor and the first mortgagee. Under this

authority, he is to collect the rents from the property and apply them to certain objects, including the payment of taxes; no payment to be made to the second mortgagee on account of the principal of the loan, but only on account of interest thereon. The receiver in possession of the property is not a receiver of the mortgagor, but merely of the mortgagor's tenant, who abandoned the property, a hotel in operation. The facts of this case take the same without the rule laid down in the case of *Norfor v. Busby, supra.*

The receiver is accumulating the income from the hotel property for the benefit of the creditors of the tenant of the mortgagor. Plaintiff is the mortgagor's assignee and trustee, and we hold that the receiver should pay to plaintiff such rental for the hotel property as the court shall adjudge reasonable; the money so received to be disbursed by plaintiff in accordance with the expressed terms of the trust under which he is functioning.

It is, of course, true that, under Rem. Comp. Stat., § 804, a mortgage of real property shall not be deemed a conveyance, but, under the state of facts here present, we hold that this section of the code is not applicable. With the merits of the action instituted by Mrs. Allen for the foreclosure of her mortgage, we have at this time nothing to do. The fact that Mrs. Rosenburg, the mortgagor, now opposes plaintiff's claim as her assignee for rent for the premises, is not material. Mrs. Rosenburg may, in the foreclosure proceeding, present any claims which exist in her favor.

The order appealed from is reversed, with instructions to proceed in accordance with this opinion.

TOLMAN, C. J., BEELER, and PARKER, JJ., concur.

MILLARD, J. (dissenting)—Under the common law rule, a mortgagee was entitled, in the absence of stipu-

lation to the contrary, to the possession and enjoyment of the mortgaged premises. That rule does not obtain in this state.

"A mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property, without a foreclosure and sale according to law." Rem. Comp. Stat., § 804.

The foregoing declares as the public policy of this state that the mortgagee has no right by virtue of the mortgage, either prior or subsequent to default, to the possession of the mortgaged property; that the right of possession until foreclosure and sale remains in the mortgagor and his successors in interest. There is no provision in the statute making it optional with the parties whether a mortgagee shall be given the right of possession.

The mortgagor could stipulate that a trustee or agent of the parties collect the rents and apply the same to the payment of the indebtedness, thus waiving the statutory right of possession. A borrower could also agree to pay interest at a rate declared by the statute to be usurious. In either case a party may decline to take advantage of a privilege given to him by statute: In the first instance, the mortgagor's right to possession of the mortgaged premises; in the second, the borrower's defense of usury. But a party may not bind himself by contract that he will not avail himself of a right which the law has allowed to him on grounds of public policy.

While a mortgagor may assign to his mortgagee the right to collect the rents from the mortgaged premises and apply the same in payment of the mortgage, yet that is good only during the life of the mortgage, and limited to the extent that, if foreclosure is commenced by the mortgagee, then the assignment fails, and is of

no effect during the pendency of that action if the mortgagor chooses to disregard the stipulation made by him. Otherwise, the mortgagee could, if permitted to enforce the contract in violation of public policy, declared by Rem. Comp. Stat., § 804, treat the mortgage not as a mere lien, but as a conveyance. The right of possession of the mortgaged premises saved to the mortgagor by statute would be destroyed. It would be, in effect, giving up possession to the mortgagee in violation of the statute, it being remembered that Mrs. Allen has commenced mortgage foreclosure proceedings.

Assuming, but not deciding, that the receiver of the hotel property, having elected to be bound by the leasing contract and having paid rental thereunder, is bound by that contract, it must not be forgotten that the receiver, standing in the shoes of the absconding tenant, would, nevertheless, be a tenant of the mortgagor. When the mortgagor objected to the enforcement of the stipulation that the relator collect the rents and apply the same to the indebtedness, the mortgagor was exercising a statutory right which should be respected.